57 CCPA

**Application of Raymond CASTAING and George Slodzian.**

**Patent Appeal No. 8287.**

United States Court of Customs and Patent Appeals.

Aug. 13, 1970.

G. Lloyd Knight, Washington, D. C. (Cushman, Darby & Cushman), Washington, D. C., attorney of record, for appellant. William T. Bullinger, Washington, D. C. (Cushman, Darby & Cushman), Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. R. V. Lupo, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, RICH, ALMOND and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals, which affirmed the rejection of claims 4–7 in appellants' application serial No. 518,453, filed January 3, 1966, for "Microanalysers by Secondary Emission."

Appellants' invention is said to be an improved microanalyser which, in the instant context, appears to be synonymous with "ionic microanalyser." Appellants' microanalyser permits viewing the distribution of a particular element on the surface of a sample piece of material. In accordance with known principles of secondary emission, a surface bombarded with a primary ion beam emits secondary ions characteristic of the materials composing the surface. In appellants' microanalyser, those secondary ions are filtered so that only the ions representative of a particular element under investigation are retained. In that respect the

device is like a mass spectrometer. Unlike a mass spectrometer, however, the present microanalyser contains optical elements, such as ion lenses, which serve to retain the ions in positions related to their point of origin in the sample as they pass through the device. The result is that an image or map of the surface with respect to the distribution of a particular element is obtained, whereas in a mass spectrometer a purely quantitative measure, such as a count, of that element is obtained.

According to appellants' specification, prior art microanalysers utilized only momentum filtration, that is, the secondary ions were separated according to momentum, with ions of other than a predetermined momentum being discarded by the device. Since the microanalyser is intended to discriminate particles by mass, the employment of momentum filtration alone led to errors, since not all the secondary ions leave the sample with the same initial velocity. Appellants add energy filtration means to the momentum filtration means in a manner to eliminate the effects of variable initial velocities while still preserving the optical image of the surface. To accomplish that, they provide lens means near the sample surface and a spherical capacitor having an exit slit, the capacitor being so positioned as to provide an image cross-over at the slit. The slit eliminate all ions having energies higher or lower than desired. After exiting from the slit, the ion beam is passed through an electrostatic lens system, the momentum filter and thence to an image converter, the beam all the while retaining its optical features to give a true view of the location on the sample surface of the element being investigated. Appellants disclose, as an alternative, that an "ion mirror" can be used in place of the spherical capacitor for energy filtration.

Claim 4, rewritten in independent form to include the limitations of non-appealed claims 2 and 3 from which it depends, reads as follows:

4. A microanalyser arrangement for providing a characteristic ionic image of the surface of a sample by bombarding said sample with particles causing the emission of secondary characteristic ions, said arrangement comprising:

a primary ion source for bombarding said sample;

lens means for concentrating said secondary ions to form a beam providing an ionic image of the sample surface;

means positioned in the path of said beam for eliminating, from said beam, ions having an energy higher than a predetermined value, for obtaining an energy filtered beam;

magnetic field means positioned in the path of said filtered beam for rejecting therefrom the ions having a momentum different from a predetermined value, said magnetic means having an outlet; and

means located at said outlet for displaying said ionic image,

wherein said magnetic field means comprise a magnetic sector and means for controlling the magnetic field in said sector,

wherein said eliminating means comprise a spherical capacitor, having two plates facing each other and an outlet, means for creating between said plates a direct current electric field, and a wall having a slit, said slit being positioned near said outlet.

Claims 5 to 7 are similar to claim 4 except that the energy filtering means recited is an ion mirror rather than a spherical capacitor.

■■ The examiner rejected all the claims for indefiniteness under 35 U.S.C. § 112, being of the view that the terms "eliminating" and "rejecting" employed in the claims are not "conventional terms." He suggested defining the two means as "deflecting" means. The board affirmed that rejection without discussion, beyond adopting "the reasons set forth in the Examiner's Answer not overruled by us." We agree with appellants that those terms used in the claims do not

render them indefinite. In fact, the expressions "eliminating" and "rejecting" seem to be entirely accurate in describing the action of the energy filter since the filtering components remove from the emission ions of other than a selected energy. Whether the terms are conventional is not necessarily controlling. An applicant is ordinarily entitled to be his own lexicographer, so long as his meaning is clear, as it is here.

The examiner further rejected claim 4 as anticipated by Herzog[1] under 35 U.S.C. § 102. Herzog discloses a mass spectrometer utilizing both momentum filtration and energy filtration, the latter being accomplished by what Herzog calls a "toroid condenser." Both the examiner and the board were of the view that the "toroid condenser" of Herzog was the same as the "spherical capacitor" recited in claim 4. We need not pass on that point, for we agree with appellants that the position of the board fails to give proper weight to the difference between a mass spectrometer and a microanalyser of the type appellants claim. As mentioned above, the latter provides an ionic image of a surface; it contains optical elements not found in a conventional mass spectrometer, which gives only quantitative indications of the presence of an element. The board said:

> Merely denominating apparatus set forth in the preamble of the instant claims as a microanalyzer and further stating its purpose to be for providing an image of a surface of a sample does not set forth structure that differentiates from apparatus which forms an image of slit 18 in Herzog.

That position appears to ignore the fact that claim 4 distinguishes over mass spectrometers such as Herzog's by recitations outside the preamble. The body of the claims recites "lens means for concentrating said secondary ions to form a beam providing an ionic image of the sample surface," and also "means

located at said outlet for displaying said ionic image." Herzog, whose device terminates with a counter, has no such image-forming or focusing means and no means for displaying an ionic image. The board went on to say, regarding Herzog:

> Furthermore, even if the claims had been limited to structure whose function was to deflect the ion-beam so as to form an image of the surface of a sample, it is not seen that this would be unobvious under 35 U.S.C. 103 since appellants acknowledge * * * [in] their specification that microanalyzers were known prior to their instant invention * * *.

We fail to see how appellants' acknowledgment that some form of microanalyser is old can render the claimed invention obvious. Appellants contend that those prior art microanalysers had only momentum filtration. We have no evidentiary basis for concluding that appellants' addition of energy filtration means, plus certain optical means for preserving the ionic image of the sample surface, was obvious. Herzog shows, at most that in mass spectrometers, where the optical and image-preservation problems of the present device are not a consideration, it was known to employ both energy and momentum filtration. Since the board has not set forth any reason how or why Herzog would suggest that the use of both kinds of filtration in a microanalyser of the type claimed here would elminate the effects of variable initial velocities of the secondary ions while still preserving the optical image of the surface under investigation, we are unwilling to conclude that such use would have been obvious.

Essentially the same considerations apply to claims 5–7. The examiner rejected those claims under § 103 on Herzog in view of Noda,[2] which shows the use of an ion mirror in a mass spectrometer. The board affirmed, stating that

---

1. U.S. Patent 2,947,868, issued August 2, 1960.

2. U.S. Patent 3,126,477, issued March 24, 1964.

it would be obvious to substitute Noda's ion mirror in Herzog's device. That position again overlooks the optical features of appellants' microanalyser which are designed to preserve the image of the sample surface. Neither Herzog nor Noda, taken separately or together, disclose or render obvious those optical features, and we must accordingly reverse the board's rejection of claims 5–7.

The decision is reversed.

Reversed.